# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jerrell McCrary, | Case Type: Civil Rights Discrimination |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| Interstate Truck Driving School of Minnesota, LLC, | |
| Defendant. | Case No. 0:20-CV-695 |

Plaintiff Jerrell McCrary ("Plaintiff" or "Mr. McCrary") brings this action for damages and other legal and equitable relief for violations of law by Defendant Interstate Truck Driving School of Minnesota, LLC ("Defendant" or "Interstate"). Mr. McCrary states and alleges as follows:

## INTRODUCTION

Mr. McCrary is a deaf individual that communicates primarily in American Sign Language ("ASL") which is his most effective means of communication. Mr. McCrary, having already obtained a Class B driver's license and CDL permit, contacted Defendant Interstate with the intent of completing its Class A training program to obtain his Class A license. Mr. McCrary told Interstate that he wished to enroll in its driver training program and that he would need an ASL interpreter for the classroom lectures. Interstate discriminated against Mr. McCrary by refusing to accommodate his reasonable request for an ASL interpreter and stated "a person needs to know English" to be a Class A driver.

Mr. McCrary had to move four hours away to attend take a Class A driving training program that was twice as long and in another state.

Due to Interstate's blatant discriminatory treatment, Mr. McCrary was humiliated and frustrated from quickly completing his Class A training program near his loved ones. He suffered financial and emotional hardship resulting from Interstate's discriminatory conduct.  He brings this suit against Interstate to compel it to comply with the antidiscrimination laws and to no longer discriminate against other prospective disabled students.  He also seeks a declaratory judgement, injunctive relief, compensatory damages, punitive damages and statutory attorney's fees and costs.

## PARTIES

1. Mr. McCrary is a deaf semi-truck driver formerly residing in St. Paul, Minnesota and now residing in Greensboro, North Carolina.

2. Defendant Interstate Truck Driving School of Minnesota, LLC, is a licensed truck driving school in Minnesota with its principal office located at 499 Villaume Avenue, South Saint Paul, Minnesota, 55075. Defendant operates as a place of public accommodation under federal and state antidiscrimination laws and is therefore subject to the Americans With Disabilities Act, Section 504 of the Rehabilitation Act, and the Minnesota Human Rights Act.

## JURISDICTION & VENUE

3. This Court has jurisdiction over Mr. McCrary's case pursuant to 28 U.S.C. §§1331 and 1343 because this is an action arising under the laws of the United States.

4. This Court has supplemental jurisdiction over the claims of the State of Minnesota set forth in this Complaint pursuant to 28 U.S.C. §§ 1367.

5. Venue is proper within this District pursuant to 28 U.S.C. § 1391.

6. All conditions precedent to this action have been fulfilled and this Complaint is timely filed.

## FACTUAL ALLEGATIONS

7. Mr. McCrary was born deaf. He communicates using ASL and relies on ASL to communicate complex information. Mr. McCrary does not read, write, or comprehend oral or written English with fluency or proficiency.

8. Mr. McCrary obtained a Class B driving license through the Carolina Trucking School on October 31, 2016, prior to moving to Minnesota.

9. On March 11, 2016, Mr. McCrary received a two-year medical certificate waiver from the Federal Motor Carrier Safety Administration (FMCSA), exempting him from the federal hearing standard of 49 C.F.R. 391.41(b)(11) through March 11, 2018.

10. In January of 2017, Mr. McCrary moved to Minnesota to live with his fiancé. Mr. McCrary sought to enroll at Defendant because it was near his residence and provided a shorter Class A truck driving program than others.

11. On March 16, 2017, Mr. McCrary met with Steven Emory ("Emory") at Minnesota Vocational Rehabilitation Services, to seek tuition assistance.

12. Mr. Emory, on behalf of Mr. McCrary, contacted Bill Collins ("Collins"), owner of Defendant, to request a tour for Mr. McCrary and to request an ASL interpreter

3

for Mr. McCrary to understand Mr. Collins' communications about the program and Defendant's facility.

13. Mr. Collins refused to provide an ASL interpreter for Mr. McCrary to access his tour because he believes "a person needs to know English."

14. Vocational Rehabilitation graciously supplied an ASL interpreter for Mr. Collins' to communicate information about his program to Mr. McCrary.

15. While touring the facility, Mr. McCrary expressed interest in enrolling in the Class A training program to Mr. Collins. He learned that Class A courses start every Monday at Defendant and Mr. McCrary intended to start as soon as possible.

16. Mr. McCrary told Mr. Collins he would need an ASL interpreter for only the classroom lectures and videos.

17. In response, Mr. Collins stated that Defendant would not provide an ASL interpreter for *any* portion of the Class A training for Mr. McCrary.

18. After they left, Mr. McCrary asked Mr. Emory to send Mr. Collins resources for sign language interpreters. On April 18, 2017, Mr. Emory sent Mr. Collins a list of ASL interpreter agencies to contact for pricing and information.

19. On April 27, 2017, Mr. Collins sent Mr. Emory a letter reiterating that Interstate would not provide an ASL interpreter for Mr. McCrary for the Class A training program.

20. Mr. McCrary enrolled at Fox Valley Technical College ("Fox Valley") in Appleton, Wisconsin, a four-hour drive one-way from his home and fiancé in St. Paul, Minnesota.

21. The Fox Valley program was a ten-week program, more than twice as long as the Interstate program Class-A program.

22. Fox Valley easily provided two ASL interpreters for Mr. McCrary's in-class lectures over a period of eight weeks.

23. Mr. McCrary completed Fox Valley's program on August 7, 2017, and its advanced driving workshop on August 24, 2017.

**COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181**

24. All preceding paragraphs are incorporated herein.

25. At all times relevant to this action, Title III of the ADA, 42 U.S.C. §§ 12181, et seq. was in full force and effect and applied to Defendant's conduct.

26. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

27. To establish disability discrimination, a plaintiff must show he was disabled, he was qualified to attend the school, the entity was covered by the laws, and the entity's actions violated the requirements of the law.

28. Mr. McCrary was born deaf and is still deaf. The ability to hear and communicate are both explicitly listed as major life activities. 42 U.S.C. § 12102(2)(A). Hearing loss is a physical impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1). Therefore, Mr. McCrary is a qualified person with a disability under the ADA.

29. Mr. McCrary was qualified to attend Interstate. Mr. McCrary had successfully passed the Department of Transportation physical, had completed the Class B training program at another school (with access to ASL interpreters), and had obtained the Federal Motor Carrier and Safety Administration medical certificate and hearing waiver. He would have been qualified to immediately begin classes at Defendant.

30. Defendant Interstate Truck Driving School, LLC is a private educational institution covered entity under the ADA. Private places of education are expressly identified as places of public accommodation under 42 U.S.C. § 12181(7)(j).

31. A place of public accommodation must ensure that individuals with disabilities are provided equal benefit in a service as those without disabilities. 42 U.S.C. § 12182(b)(1)(A)(ii).

32. It is discrimination under the ADA for a place of public accommodation to fail to make "reasonable modifications in policies, practices, or procedures" to provide "services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

33. It is discrimination under the ADA to fail to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

34. The ADA was intended to remedy "the discriminatory effects of…communication barriers" for individuals with hearing disabilities. 42 U.S.C. § 12101(a)(5).

35. Defendant discriminated against Mr. McCrary by violating the aforementioned provisions of the ADA.

36. Defendant violated the ADA by denying Mr. McCrary full and meaningful access to all of its Class A program content.

37. Defendant also discriminated against Mr. McCrary when it refused to provide an ASL interpreter for its tour that it provides to its nondisabled prospective students.

38. The violation of ADA was the direct and proximate cause of damage to Mr. McCrary.

### COUNT II: VIOLATION OF THE FEDERAL REHABILITATION ACT, 29 U.S.C. § 794

39. All preceding paragraphs are incorporated herein.

40. The Federal Rehabilitation Act ("Rehab Act") is designed to prevent "discrimination under any program or activity receiving federal funding," and "requires entities receiving federal funding to furnish auxiliary aids which afford handicapped persons equal opportunity to obtain the same result." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 447 (8th Cir. 2013); see also 29 U.S.C. § 794; 45 C.F.R. § 84.4(b)(2).

41. The Rehab Act uses the same definition of a person with a disability as the ADA. 29 U.S.C. §§ 705(20)(B), 705(21)(A).

42. The Rehab Act specifically establishes that a person who is deaf has a "significant disability." 29 U.S.C. § 705(21)(A)(iii). Therefore, Mr. McCrary is a disabled individual under the Rehab Act.

7

43. The Rehab Act uses the same framework as the ADA to establish a disability discrimination violation. *Argenyi v. Creighton Univ.*, 703 F.3d 441, 447 (8th Cir. 2013).

44. As specified above, Mr. McCrary was qualified to attend Interstate.

45. Interstate receives federal funding, including student financial aid from the Department of Education and GI Bill benefits from the Department of Veterans Affairs. Therefore, Interstate is a covered entity under the Rehab Act.

46. Under the Rehab Act, any organization receiving federal funding must make reasonable accommodations to ensure that any individual with disabilities has the opportunity to enjoy the same benefits as non-disabled individuals. 29 U.S.C. § 794. Those organizations must take the necessary steps to make sure that no individual with a disability is excluded or denied services that are offered to non-disabled individuals. *Id.*

47. As with the ADA, Interstate violated the Rehab Act by denying Mr. McCrary access to equal enjoyment of its services.

48. Interstate further discriminated against Mr. McCrary by refusing to provide an ASL interpreter for its tour that it offers to non-disabled students.

49. The violation of Rehab Act was the direct and proximate cause of damage to Mr. McCrary.

### COUNT II: VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. § 363A.11, 363A.13

50. All preceding paragraphs are incorporated herein.

51. The Minnesota Human Rights Act (MHRA) prohibits public accommodations, including educational institutions, from denying any disabled individual the "full and equal enjoyment" of their "goods, services, facilities, privileges, advantages, and accommodations." Minn. Stat. § 363A.11, subd.1(1).

52. As with the ADA, an individual can establish a violation of the MHRA by showing he is disabled, he is qualified to attend the public accommodation, the entity is covered by the law, and the entity's actions violated the law.

53. The MHRA defines a person with a disability as a person who "has a physical, sensory, or mental impairment that materially limits one or more major life activities." Minn. Stat. § 363A.03, subd.12. Mr. McCrary's deafness qualifies him as a person with a disability under the MHRA.

54. As stated above, Mr. McCrary was qualified to attend the Class A program at Interstate.

55. The MHRA covers places of "public accommodation," which is a broad category that includes "a business, accommodation … or facility of any kind." Minn. Stat. § 363A.03, subd. 34. An "educational institution" is covered, and includes any private professional, technical, or vocational institution and their agents. Minn. Stat. § 363A.03, subd. 14.

56. Interstate is an educational institution, as well as a business or facility. Therefore, Interstate is covered by the MHRA.

57. It is a violation of the MHRA to fail to provide "reasonable accommodations to the known physical, sensory, or mental disability of a disabled person." Minn. Stat. § 363A.11, subd.1(2).

58. By denying Mr. McCrary an ASL interpreter for the Class A lectures, it "failed to take all necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals" in violation of Minn. Stat. § 363A.11, subd. 3(3).

59. As with the ADA, Interstate failed to provide Mr. McCrary with equal enjoyment of its services.

60. Interstate refused to provide Mr. McCrary a reasonable accommodation for its tours and its classes.

61. Interstate's failure to provide Mr. McCrary an ASL interpreter denied him the right to equal enjoyment of their service. This violation was the direct and proximate cause of his damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

1. A declaratory judgment that the practices complained of herein are unlawful and violative of Minnesota and Federal law;

2. An Order requiring Defendant to compensate, reimburse, and make whole Plaintiff for his losses attributable to Defendant's misconduct including but not limited to, compensatory damages and economic damages for having to attend a longer program four hours away in a different state;

3. An Order enjoining Defendant from engaging in further discriminatory practices; to provide disability access training and policy changes that prohibits discrimination based on disability.

4. The Court to award Plaintiff costs, disbursements, and expenses of this action, including statutory attorney's fees as provided by the ADA, MHRA, and Rehab Act;

5. For treble damages as allowed by the MHRA; and

6. For such further and other relief as the court deems fit.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial in this action for all claims so triable.

Dated: March 9, 2020  **GILBERT LAW PLLC**

                                                                                                  s/*Heather M. Gilbert*
Heather M. Gilbert, MN #0392838
4856 Banning Avenue
St. Paul, MN 55110
Telephone: (651) 340-9642
Facsimile: (651) 344-0835
heather@gilbertlawpllc.com

**ATTORNEY FOR PLAINTIFF**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, to the party against whom the allegations in this pleading are asserted.

Dated: March 9, 2020                    **GILBERT LAW PLLC**

                                          ___s/*Heather M. Gilbert*_____
Heather M. Gilbert, MN #0392838
4856 Banning Avenue
St. Paul, MN 55110
Telephone: (651) 340-9642
Facsimile: (651) 344-0835
heather@gilbertlawpllc.com

**ATTORNEY FOR PLAINTIFF**